Patrick W. Mause (SBN 024269)
Law Office of Patrick Mause, PLLC
1830 East Broadway, Suite 124-302
Tucson, AZ 85719
(520) 342-0000
(520) 342-0001 (fax)
Patrick@PMauseLaw.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margarett Kaiser,<br><br>Plaintiff,<br><br>v.<br><br>Life Insurance Company of North America, a foreign corporation d/b/a New York Life Insurance Company;<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

For her Complaint, plaintiff Margarett Kaiser ("Plaintiff" or "Kaiser") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Margarett Kaiser is a resident and citizen of Pima County, Arizona.

2.      Defendant Life Insurance Company of North America ("LICNA"), d/b/a New York Life Insurance Company ("NY Life") is a foreign insurance company authorized to do business in Pima County, Arizona and which was doing business in Pima County, Arizona at all times material hereto.

3.      This case involves Kaiser's claim for long-term disability benefits provided to her under her employer's ERISA-governed employee welfare benefit plan. *See e.g.* Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*; 29 U.S.C. § 1132(a)(1).

4.      At all times material hereto, Kaiser was covered under the ERISA plan in Pima County, Arizona through her employment with Tucson Medical Center.

5.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391 because the breaches of Kaiser's LTD plan occurred in Pima County, Arizona; because Kaiser suffered harm in Pima County, Arizona; and because LICNA may be found in Pima County, Arizona.

## Kaiser Becomes Totally Disabled in 2016
## LICNA Certifies Her Disability And Approves Her Claim,
## And LICNA Pays Her Total Disability Benefits For 7½ Years

6.      In May, 2000 Kaiser began working as a bed control nurse at Tucson Medical Center in Tucson.

7.      In November 2016, Kaiser became totally disabled and was forced to stop work.

8.      Under her LTD policy, Kaiser had to be disabled and out of work for 180 days, or roughly six months, before she would qualify for LTD benefits.

9.      Because she remained unable to work after May 2017—roughly six months after stopping work—Kaiser applied for LTD benefits with her employer's LTD insurer, LICNA.

10.      At that time, LICNA was owned by Cigna Group. Eventually, LICNA was purchased by NY Life which is now the parent company of LICNA.

11.      Initially, LICNA approved Kaiser's disability claim based on anxiety.

12.      Under her LTD plan, Kaiser was limited to twenty-four months of benefits if her disability were due to a psychological condition such as anxiety.

13.      Under her LTD plan, Kaiser was entitled to twenty-four months of benefits as long as she was unable to perform the material duties of her own occupation. After twenty-four months, she was entitled to ongoing LTD benefits

only if she were unable to work in any gainful occupation she was reasonably qualified to perform.

14.    When Kaiser was approaching the twenty-four month limitation on psychologically-based LTD benefits (and own-occupation benefits), LICNA analyzed her claim and determined that she was also totally disabled from any occupation due to physical conditions,

15.    After reviewing her claim, LICNA determined that she was unable to work in any occupation due to physical conditions including ongoing back pain due to severe spinal stenosis.

16.    Accordingly, LICNA re-certified Kaiser's disability, approved her for benefits under the LTD plan's then-applicable any occupation standard, and paid her ongoing benefits beyond May 2019.

17.    In 2020, 2021, 2022, and 2023, LICNA reevaluated Kaiser's claim, recertified her disability based on her ongoing, severe back pain, and continued to pay her claim.

18.    For example, in June 2021, Kaiser's lumbar MRI showed severe central canal stenosis at the L4-L5 level, which is well known to cause pain, difficulty sitting, and radiating pain.

19.    Because Kaiser's lumbar spinal problems were largely degenerative in nature, those conditions were likely to worsen over time, not get better.

20.    In early 2023, and as part of its ongoing claim management, LICNA advised Kaiser to obtain either an independent medical examination or functional capacity evaluation ("FCE") to assess her ability to work.

21.    Through Tucson Orthopaedic Institute ("TOI"), Kaiser was able to schedule an independent FCE which was completed on March 23, 2023.

22.    The FCE documented Kaiser's multiple physical restrictions and limitations and ultimately concluded that "her functional lifting and carrying

capacities are very low, even below the SEDENTARY Physical Demand Characteristic of Work." (capitalization in original).

### LICNA Terminates Kaiser's Benefits Three Months Before She Undergoes An L4-S1 Lumbar Decompression And Fusion Surgery

23.    In 2023, Kaiser also began to contemplate additional spinal surgery because her condition was progressively worsening.

24.    Spinal surgery is an incredibly invasive procedure and carries the risk of potentially catastrophic outcomes even when done properly.

25.    As a general rule, people do not contemplate having spinal surgery when their back pain is improving. To the contrary, people only contemplate having spinal surgery when their back pain is, or has gotten, severe and debilitating.

26.    Indeed, in late 2023 and in response to LICNA's request for a Medical Request Form ("MRF") from her attending physician explaining her restrictions and limitations, her primary care physician, Peter Michalak, noted, "We reviewed visit note followed 6/29/2023 by Stephen Curtin, diagnosis of lumbar stenosis L4-L5 status postlaminectomy defects at L5-S1. Considering surgical intervention. Margarett is now trying to lose weight to be a candidate for surgery."

27.    In August 2023, Kaiser explained to LICNA that she was trying to "lose weight to have two level [spinal] fusion."

28.    In early 2024, Kaiser was attempting to schedule her lumbar decompression and fusion surgery but was unable to schedule it until June 19, 2024.

29.    But three months before that occurred, LICNA terminated Kaiser's benefits on April 10, 2024 based on a paper-only file review by an in-house LICNA employee physician.

30.    LICNA's decision terminating Kaiser's LTD benefits two months before her scheduled spinal fusion surgery, and after she had been found to be totally disabled for seven-and-a-half years, defies all logic.

31.    Indeed, the file review LICNA relied upon to terminate Kaiser's benefits claimed to rely upon and agree with the findings of her 2023 FCE even though the FCE examiner had found Kaiser's "functional lifting and carrying capacities are very low, even below the SEDENTARY Physical Demand Characteristic of Work."

## **Kaiser Appeals LICNA's Wrongful Benefits Termination**

32.    On October 28, 2024, Kaiser timely appealed LICNA's decision terminating her LTD benefits by facsimile and by USPS Priority Mail.

33.    With her appeal, Kaiser included extensive evidence confirming her ongoing disability such as:

    a.    The report of an May 22, 2024 lumbar MRI documenting, among other things, that Kaiser had "**Unchanged severe canal stenosis at L4-5** due to degenerative factors with mild bilateral foraminal stenosis" and "Laminectomy defects at L5-S1… with moderate left and mild right foraminal narrowing." (emphasis added)

    b.    Record of June 6, 2024, pre-operative surgery appointment which noted, among other things, that her back imaging reflected "spondylitic changes throughout with degenerative disc disease most notable at L5-S1, L4-L5 with a subluxation at L4-L5," that Kaiser was "scheduled for a L4-S1 decompression and fusion," and that she was "fitted for an[d] instructed on the use of walker."

    c.    Records from Kaiser's June 19, 2024 lumbar fusion surgery noting, among other things, that her pre- and post-operative diagnoses included "SPINAL STENOSIS OF LUMBAR REGION WITH NEUROGENIC CLAUDICATION"; that she underwent a

"Posterior lateral fusion L4-S1 with pedicle screw fixation, local autogenous bone and bone morphogenic protein"; that she underwent a "Posterior lumbar interbody fusion L4-5 with use of peek interbody cage, local autogenous bone and bone morphogenic protein"; that the findings included "Severe stenosis L4-5, postsurgical changes L5-S1"; that "Patient has undergone 3 separate epidurals the first being September 24, 2021, then January 11, 2023, and then December 15, 2023 all at the same L4, L5 segment level these did give her good relief of symptoms but unfortunately did not last long"; and that "Patient strongly impresses upon how much the pain is affecting her everyday activities and quality of life. She cannot stand or walk for extended periods of time."

d. A July 1, 2024, post-operative note documenting that since her L4-S1 fusion, "her pain has been worse."

## LICNA FAILS TO DECIDE KAISER'S APPEAL

## WITHIN THE TIME LIMITS ALLOWED UNDER ERISA, AND

## SHE IS DEEMED TO HAVE EXHAUSTED HER ADMINISTRATIVE REMEDIES

34.    Under ERISA, LICNA had 45 days to decide Kaiser's appeal: To December 13, 2024. 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i).

35.    In an October 31, 2024 letter, LICNA acknowledged receiving Kaiser's appeal.

36.    In a November 5, 2024 letter, LICNA stated that it was scheduling a review of Kaiser's claim.

37.    In a November 25, 2024 letter, LICNA stated that its Medical Director had advised that Kaiser would have some medical necessary limitations. The letter also stated that those limitations were being reviewed with LICNA's

Vocational Professional to determine if Kaiser was functionally impaired under the applicable any-occupation disability standard.

38.    In a December 10, 2024 letter, LICNA stated that it required an extension of up to 45 days—to January 24, 2024 according to LICNA's letter—to make a decision on Kaiser's appeal. In that letter, LICNA stated, "We require this extension because we are scheduled [sic] a Medical Professional Review of Ms. Kaiser's file. This review is needed to clarify her functional ability, and to determine whether she qualifies for disability benefits as defined under the policy. At this time we are waiting for the final addendum report. We expect to make our appeal decision within 45 days from December 10, 2024."

39.    Under ERISA, LICNA may only obtain a 45-day extension to its deadline to make an appeal decision if "special circumstances" exist. 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i).

40.    If a disability insurer fails to decide an appeal within its 45-day deadline, and unless "special circumstances" exist, the claimant is deemed to have exhausted her administrative remedy without the administrator exercising its discretion; and she may therefore file suit. 29 C.F.R. §§ 2560.503-1(l)(1), (l)(2)(i).

41.    Obtaining a medical file review is a routine process for a disability insurance company. As a matter of law, getting such a review therefore does not qualify as a "special circumstance." *See Salisbury v. Prudential Ins. Co. of Am.*, 238 F. Supp. 3d 444, 449–50 (S.D.N.Y. 2017) ("The only rationale for the extension provided in the company's written notice was that Prudential needed additional time 'to allow for review of the information in Ms. Salisbury's file which remains under physician and vocational review.' But virtually every appeal of the denial of a disability benefits claim will require 'physician and vocational review,' and thus this cannot constitute a valid 'special circumstance.'" (record citation omitted)); *Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693, 701 (E.D. Ky. 2021), *aff'd,* No. 21-5441, 2021 WL 5873159 (6th Cir. Dec. 13, 2021) ("Needing

additional time for physician review is not a 'special circumstance.'…
Accordingly, Standard did not comply with ERISA's claim processing
requirements when it delayed its decision on Bustetter's claim." (citations
omitted)); *see also Cogdell v. Reliance Standard Life Ins. Co.*, No. 1:23-CV-01343
(AJT/JFA), 2024 WL 4182589, at *5 (E.D. Va. Sept. 11, 2024); *Rappaport v. Guardian
Life Ins. Co. of Am.*, No. 1:22-CV-08100 (JLR), 2024 WL 4872736, at *13 (S.D.N.Y.
Nov. 22, 2024); *Brewer v. Unum Grp. Corp.*, 622 F. Supp. 3d 1113, 1126 (N.D. Ala.
2022); *Fredrich v. Lincoln Life & Annuity Co. of New York*, 603 F. Supp. 3d 38, 47
(E.D.N.Y. 2022); *Satter v. Aetna Life Ins. Co.*, No. 3:16-CV-1342(AWT), 2019 WL
2896410, at *6 (D. Conn. Mar. 20, 2019); *Aitken v. Aetna Life Ins. Co.*, No. 16 CIV.
4606 (PGG), 2018 WL 4608217, at *13 (S.D.N.Y. Sept. 25, 2018).

42.     Although LICNA could not show "special circumstances" for its first
extension of its deadline to decide Kaiser's appeal, and although LICNA failed to
show any "special circumstances" existed for its first extension of its deadline to
decide Kaiser's appeal, and although she therefore was deemed to have
exhausted her administrative remedies and could file suit, Kaiser elected not to
object to LICNA's improper request for a "special circumstances" extension and
elected not to file suit at that time.

43.     On December 26, 2024, LICNA sent Kaiser another letter stating it
was scheduling a Medical Professional Review and would contact Kaiser within
thirty days.

44.     On January 24, 2025, LICNA sent Kaiser another letter in which it
reiterated that it had requested medical and vocational reviews of her claim and
further stated that it would contact her within thirty days.

45.     Under ERISA, LICNA's maximum deadline to decide Kaiser's appeal
was January 27, 2025, which includes 45 days to decide her appeal plus a 45 day
"special circumstances" extension (even though no "special circumstances"
existed, *see Salisbury, Bustetter, supra*). 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3)(i).

46.    As of the date of this filing, LICNA has not made a decision on Kaiser's appeal.

47.    Under ERSIA, Kaiser is therefore deemed to have exhausted her administrative remedies. 29 C.F.R. §§ 2560.503-1(l)(1), (l)(2)(i).

48.    Under ERISA, Kaiser is also deemed to have exhausted her administrative remedies without LICNA exercising any discretion it may have had to determine entitlement to benefits. 29 C.F.R. §§ 2560.503-1(l)(1), (l)(2)(i) ("In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan… If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, *the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary*." (emphasis added)).

49.    Under ERISA, LICNA's violations of ERISA were not *de minimis* because, among other things, LICNA failed to specify the alleged "special circumstances" requiring an extension of its deadline to decide her appeal in any of its letters; the reasons LICNA did provide (obtaining medical and vocational reviews) to justify its requested extension do not constitute "special circumstances" under ERISA; LICNA failed to decide Kaiser's claim within 45 days of her appeal; and even if LICNA were entitled to a 45-day extension of its deadline to decide her appeal, it failed to decide her claim within that additional 45-day deadline, which expired on January 27, 2025. 29 C.F.R. §§ 2560.503-1(l)(1), (l)(2)(ii).

50.    Under ERISA, even if Kaiser's LTD plan had properly granted LICNA discretion to determine entitlement to benefits, because LICNA failed to exercise that discretion and Kaiser's claim is "deemed denied on review without the exercise of discretion by an appropriate fiduciary," Kaiser's claim must be

1    reviewed under the *de novo* standard of review. 29 C.F.R. §§ 2560.503-1(l)(1),

2    (l)(2)(i).

3    ### COUNT ONE: CLAIM FOR BENEFITS UNDER ERISA, 29 U.S.C. § 1132(A)(1)

4    51.    Kaiser incorporates all preceding allegations as though set forth

5    herein.

6    52.    Kaiser is totally disabled under the LTD plan.

7    53.    Kaiser is entitled to ongoing LTD benefits under the plan.

8    54.    LICNA's and its allegedly "independent" reviewers' opinions and

9    decisions were at all times caused, driven, and infected by their inherent financial

10   and other conflicts of interest which deprived Kaiser of the full and fair review to

11   which she is entitled under ERISA.

12   55.    Upon information and belief, discovery will show that LICNA's

13   reviewers and its so-called "independent" file reviewers harbor a strong anti-

14   claimant bias that at all times infected the claim process and drove and influenced

15   the medically improper and unsupported opinions they provided in this case.

16   56.    Kaiser has been harmed by LICNA's wrongful decision terminating

17   her LTD claim.

18   57.    At all times material hereto, LICNA's conduct was replete with

19   substantive and procedural errors that deprived Kaiser of the full and fair review

20   to which she is entitled under ERISA, and which further drove and influenced the

21   wrongful decisions to terminate her LTD benefits and deny her appeal.

22   58.    LICNA's decisions terminating Kaiser's LTD claim were contrary to

23   the evidence and *de novo* wrong.

24   59.    Regardless of the standard of review, Kaiser is entitled to ongoing

25   LTD benefits under the plan.

26   ### PRAYER FOR RELIEF

27   Wherefore, Plaintiff Margarett Kaiser prays for relief as follows:

28

A. For long-term disability benefits due under the plan;

B. For any other benefits Kaiser may be entitled to receive under her employer's ERISA benefits plan due to her disability including but not limited to a life insurance waiver of premium approval;

C. For pre- and post- judgment interest at the maximum allowable legal or equitable rate but in no case at a rate lower than the maximum rate at which LICNA earned return on equity, return on interest, or otherwise profited from the wrongful failure to pay Kaiser's disability benefits;

D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

E. For such other relief as may be available or which the Court deems just, equitable, and proper.

DATED January 29, 2025,

LAW OFFICE OF PATRICK MAUSE, PLLC

By: _s/ Patrick W. Mause_
    Patrick W. Mause
    Attorney for Plaintiff